EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GEORGE BELL POUND y JULIO HIGINIO VÁZQUEZ DE LA TORRIENTE, acusados y apelantes.

*Número:* CR-72-7          *Resuelto:* 16 de enero de 1973

*Enrique Miranda Merced,* abogado de los apelantes; *J. F. Ro-dríguez Rivera, Procurador General Interino,* y *Adolfo J. Vilá, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Un jurado declaró culpable a los apelantes por varios delitos de robo a mano armada y de infracciones a los Arts. 6, 8 y 32 de la Ley de Armas de Puerto Rico. 25 L.P.R.A. sec. 411 *et seq.* Los actos delictivos se realizaron el mismo día 18 de junio de 1970, en la Joyería Liz y en el Restaurant La Linterna, ubicados, uno en el sector del Condado y el otro en Miramar. No conforme con los veredictos los apelantes nos piden la revocación señalando varios errores que discutiremos seguidamente.

Los primeros tres errores impugnan el procedimiento de identificación. Arguyen los apelantes que la identificación estuvo viciada de sugestividad, que no tuvieron asistencia legal en esa etapa de los procedimientos y que no se siguió la norma sentada en *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969), que requiere la participación del acusado en unión con otras personas de circunstancias exteriores semejantes en el procedimiento de identificación.

Los apuntamientos adolecen de un vicio fatal: No tienen apoyo alguno en la prueba desfilada. Los apelantes parten en su alegato de un enfoque equivocado pués no hay en este caso un problema de identificación. Basta reproducir a este respecto

el testimonio del dueño de la joyería, Reto Kominoth, y del dueño del Restaurant La Linterna, Perfecto González.

Declaró Kominoff [*sic*]:

".    .    .    .    .    .    .    .

Después que yo le informé ésto a la policía, yo fui al aeropuerto para buscarlos, que eran como las cuatro y media que yo me fui de la tienda. Y como a las cinco y cuarto yo vi a George Bell caminando en los alrededores del aeropuerto con una maleta en sus manos y yo fui a buscar un policía para que lo arrestara. Arrestamos al Sr. Bell y lo llevamos al Cuartel de la Policía del aeropuerto y después que estaba en el Cuartel de la Policía, yo me fui a ver, a buscar el otro hombre, Vázquez. Después de 15 minutos, no lo vi y no lo encontré. Entonces regresé al Cuartel de la Policía para que me dieran el número de vuelo y el número de puerta por donde sale el número de vuelo para ver si podía ver a Vázquez allí. Fui a la 'reja' 25 después de éso y vi a Vázquez por allí y fui busqué otro policía. Cuando regresamos vimos que Vázquez estaba subiendo a bordo del avión. Le dije al policía que velara al avión que no se saliera de la pista y volví para buscar los agentes del C.I.C. que venían hacia el aeropuerto. Cuando ellos llegaron, volvimos al avión que ya estaba cerrado y hicimos que abrieran el avión de nuevo y entonces yo entré dentro del avión con los agentes, identifiqué al Sr. Vázquez, lo arrestaron y lo llevaron al Cuartel de la Policía. En ese tiempo ellos abrieron la maleta que estaba cargando el Sr. Bell y toda la. . . ." (T.E. págs. 28 y 29.)

González declaró:

.    .    .    .    .    .    .    .

P. ¿Qué fue lo próximo que usted supo de los asaltantes?

R. Bueno, lo próximo fue que Roberto lo vio en el periódico retratado y entonces cogió llamó la detective y dijo que eran los mismos, entonces vino la detective, trajo la foto y ellos son, sí. Como eso fue todo en el intervalo de un día o dos vimos la foto de ellos y los reconocimos.

P. Testigo, usted dice que la detective vino y le trajo las fotografías.

R. Sí

HON. JUEZ:

¿Trajo qué?

R. Las fotos que digo venían en el periódico, ahí estaban porque los periódicos los compró un muchacho empleado y la vimos. Además vino la detective y vimos que eran ellos." (T.E. págs. 99 y 100.)

Tanto Kominoth como González identificaron a los apelantes sin intervención de la policía. El primero, sospechando la fuga de los apelantes va por su cuenta al aeropuerto, reconoce a Bell y pide su arresto al primer policía que encuentra y que nada sabía del robo. Luego averiguó el número del vuelo de Vázquez y, sin pérdida de tiempo, se dirige al salón de espera correspondiente, lo ve allí e inmediatamente busca a otro policía para que lo arreste. Todo ello, repetimos, sin intervención de la policía y antes de que se efectuara arresto alguno. González por su parte reconoció las fotos de los apelantes en el periódico. Su empleado Roberto Pérez Nieves llamó a la policía y les informó de su identificación.

Quizás no se encuentre un caso de mayor espontaneidad en la identificación que el caso de autos. La identificación la hicieron los propios perjudicados a iniciativa propia y antes de que se verificara el arresto por los delitos cometidos contra ellos. En esa etapa todavía no había intervenido la maquinaria policial y, por lo tanto, no era necesario la asistencia de abogado ni la aplicación de las normas sentadas en *Gómez Incera*, supra.

*CUARTO ERROR:*

"Erró el Honorable Tribunal al admitir en evidencia las armas alegadamente ocupadas en el aeropuerto a George Bell Pound, dos de las cuales alegadamente habían sido usadas por los acusados-apelantes durante la perpetración de los dos robos que se le imputan."

El apuntamiento es inmeritorio. Tanto el perjudicado Kominoth como el policía Cruz Jiménez, quien prestaba servicios en el aeropuerto el día del arresto del apelante Bell, identi-

ficaron debidamente las armas que se le ocuparon a éste, por lo que las mismas eran admisibles en evidencia.

*QUINTO ERROR:*

"La evidencia presentada por el Ministerio Público era insuficiente para establecer fuera de duda razonable que la pistola alegadamente portada por George Bell Pound durante el alegado robo en la Joyería Liz estuviese cargada."

█ El apelante Bell intenta impugnar la suficiencia de la prueba para establecer la infracción al Art. 8 de la Ley de Armas durante el atraco de la Joyería Liz. Los testimonios de Kominoth, dueño de la joyería, y de Raymond Ward, quien se encontraba en la joyería comprando un regalo al momento del atraco, sostienen adecuadamente este cargo.

*SEXTO ERROR:*

"Erró el Honorable Tribunal al declarar culpable y sentenciar a George Bell Pound por dos alegadas infracciones al Art. 6 de la Ley de Armas (M 70-1664 y M 70-1665) en relación con el alegado robo al Restaurant La Linterna, a pesar de que la prueba del Fiscal solo tendía a establecer una infracción al Art. 6 en esa transacción."

Hemos examinados los autos y constatamos que, efectivamente, este error fue cometido. La prueba desfilada revela que el apelante Bell sólo poseía una pistola al realizar el atraco de la joyería y del restaurant. Sin embargo, se presentaron tres acusaciones por esos mismos hechos, la M-70-1664 y M-70-1665, las cuales son idénticas. El Procurador General en su informe se allana en la revocación de una de estas sentencias.

El séptimo error se refiere a la misma situación que la anterior, pero con respecto al apelante Vázquez de la Torriente, y, procede igualmente que revoquemos una de las sentencias por la infracción al Art. 6.

*OCTAVO ERROR:*

"Erró el tribunal de instancia al declarar culpable y sentenciar a George Bell Pound por varias alegadas infracciones al Art. 6

de la Ley de Armas, a pesar de que esas alegadas infracciones se referían a una misma pistola, y constituían una misma infracción al Art. 6 de la Ley de Armas, que penaliza la posesión de un arma de fuego sin haber obtenido la licencia correspondiente."

■  Las acusaciones contra Bell por infracción al Art. 6 de la Ley de Armas le imputan propiamente cinco cargos. Tres por la posesión sin licencia de las tres armas que le fueron ocupadas en el aeropuerto, y, dos por la posesión de la pistola usada para el atraco de la Joyería Liz y por la usada en el Restaurant La Linterna. La contención del apelante Bell es que se trata de un delito contínuo.

No tiene razón. No se trata de una sola transacción ni una serie de actos continuos puestos en movimiento por un solo impulso. *Cf. Pueblo* v. *Negrón,* 77 D.P.R. 782 (1954). No hay aquí unidad de tiempo ni de espacio en la posesión de las armas de fuego. La prueba fue distinta para cada uno de los cargos; como también fue distinta la intención criminal en cada uno de ellos. Se trata de delitos separados y distintos en cada una de las ocasiones que poseyó el arma de fuego independientemente de que se tratara de la misma arma.

El noveno error hace idéntico planteamiento con respecto al apelante Vázquez y procede la misma determinación que la anterior.

*DECIMO ERROR:*

"Erró el Honorable Tribunal al declarar culpable y sentenciar a los acusados-apelantes por alegadas infracciones al Artículo 32 de la Ley de Armas a pesar de que dichas alegadas infracciones se habían fundido (*merged*) en los alegados delitos de robo."

■  El apuntamiento es frívolo. Se trata de dos delitos distintos cuyos elementos esenciales son diferentes. La infracción al Art. 32, apuntar con un arma de fuego, no está incluido en el de robo. *Pueblo* v. *Rivera Ramos,* 88 D.P.R. 612 (1963), citado por el apelante en apoyo de este apuntamiento, no es de aplicación.

■ Tienen razón los apelantes en su SEÑALAMIENTO ADICIONAL impugnando las sentencias de ocho meses de cárcel que les fueron impuestas en todos los casos por delitos menos graves. En virtud de la Ley Núm. 9 de 7 de julio de 1971 la pena por delito menos grave no excederá de seis meses. Procede, por lo tanto, reducir a seis meses las sentencias por los delitos menos graves.

*Se confirman las sentencias dictadas contra los apelantes por los delitos de robo y de infracciones a los Arts. 6, 8 y 32 de la Ley de Armas, quedando reducidas estas últimas a seis meses de cárcel. Se revoca la sentencia por infracciones al Art. 6 de dicho estatuto dictada contra el apelante George Bell Pound en el caso M-70-1666 y la dictada contra Higinio Vázquez de la Torriente en el caso M-70-1661 por infracción a dicho Art. 6.*